**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alfonso SIERRA–HERNANDEZ,
Defendant-Appellant.**

No. 77–3559.

United States Court of Appeals,
Ninth Circuit.

Sept. 5, 1978.

Certiorari Denied Oct. 30, 1978.
See 99 S.Ct. 333.

---

Craig E. Fenech (argued), San Diego, Cal., for defendant-appellant.

Sandra J. Wittman, Asst. U. S. Atty. (on the brief), Michael H. Walsh, U. S. Atty., Sandra J. Wittman, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Appeal from. the United States District Court for the Southern District of California.

Before BARNES and KENNEDY, Circuit Judges, and BARTELS,* District Judge.

KENNEDY, Circuit Judge:

The issues raised on this appeal concern the legality of a stop and the subsequent search of appellant's truck. The search uncovered fifty-seven pounds of marijuana concealed under the hood, and appellant was convicted on one count of possession, in violation of 21 U.S.C. § 841(a)(1), and one count of importation, in violation of 21 U.S.C. §§ 952 & 960. Appellant challenges the admissibility of the evidence obtained as a result of the search. The facts of the case, while simple, present one point that seems not to have arisen precisely in our many previous discussions of the requirements imposed on an officer who stops someone for questioning, and that is the weight an officer may place on a tip given in person by an unidentified informant.

United States border patrol agent Thomas was on duty at mid-day June 15, 1977, checking the citizenship of workers in a field two hundred yards north of the border between the United States and Mexico. While agent Thomas was thus engaged,. a man, described in the record only as wearing farmer's overalls and a baseball cap and driving a late-model brown Mercedes Benz, approached him. The man pointed to a black pickup truck proceeding on a road about one hundred yards away and said, "The black pickup truck just loaded with weed at the canebreak." The canebreak was next to the field and was thickly covered by cane plants fifteen to twenty feet high. Thomas knew that the general neighborhood and the canebreak in particular were the sites of previous incidents of drug smuggling and illegal entry of aliens. Without asking the unidentified man for his name or for any other information, agent Thomas radioed for assistance and began following the black pickup truck in his own vehicle. With the aid of two other border patrol units, Thomas stopped the pickup truck after following it about four and a half miles. The defendant was the sole occupant of the truck. Agents discovered the concealed marijuana after a conversation which we relate below when discussing the issue of consent to the search. We first examine the legality of the stop.

I

The appellant argues that the stop was unlawful because the declaration by the unidentified man was not an adequate ground for Thomas to form a reasonable suspicion that criminal activity was occurring. We disagree.

A greater showing of the reliability of an informant's statement is necessary to support probable cause for a search than is needed to support the reasonable, or founded, suspicion which is a prerequisite for a valid stop. Compare Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) (probable cause for search), with United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), and United States v. Avalos-Ochoa, 557 F.2d 1299 (9th Cir.), cert. denied, 434 U.S. 974, 98 S.Ct. 532, 54 L.Ed.2d 466 (1977) (founded suspicion for stop). Although it is not certain how much less demanding the test of reliability is where only reasonable suspicion is required, the Supreme Court has said that "[s]ome tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." Adams v. Williams, 407 U.S. at 147, 92 S.Ct. at 1924.

* Honorable John R. Bartels, Senior United States District Judge for the Eastern District of New York, sitting by designation.

Information from a citizen who confronts an officer in person to advise that a designated individual present on the scene is committing a specific crime should be given serious attention and great weight by the officer. Nevertheless, whether the information is sufficient to justify a stop must be evaluated with reference to the facts of each case, for there is no per se rule of reliability.[1]

There is an important difference between this case and *Adams v. Williams,* in which the Supreme Court discussed the indicia of an informant's reliability necessary to support a valid stop based on his tip. Here, since the informant was not known to the officer and cannot be traced, the officer's testimony cannot be corroborated. But just as there is no per se rule establishing the reliability of a citizen's tip to justify a stop in every instance, so too there is no per se rule requiring an officer to obtain the identity of the informant before he acts. In evaluating the reasonableness of the officer's conduct in this case, we therefore must consider both the circumstances in which the tip was made and the facts which would justify the officer in acting without knowing the citizen's identity or obtaining information for tracing him later.

Although this case is different from one where a tip is given by the victim of a crime, *see, e. g., United States v. Mahler,* 442 F.2d 1172 (9th Cir.) (inquiry as to whether information provided probable cause), *cert. denied,* 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971), or where an officer knows from independent sources that a crime has in fact been committed, *see United States v. Coades,* 549 F.2d 1303 (9th Cir. 1977) (per curiam) (inquiry as to whether citizen tip justified stop), nevertheless indicia of reliability are present. The officer knew that the canebreak had been the site of previous criminal activity. The tip here was neither vague as to the time of the criminal activity, *cf. United States v. DeVita,* 526 F.2d 81, 83 (9th Cir. 1975) (informant told police that "a Mr. DeVita would be transporting some type of narcotics, possibly to the Pittsburg area, sometime in the near future"), nor imprecise as to the kind of crime being committed, *cf. id.; Long v. District of Columbia,* 152 U.S.App. D.C. 187, 195, 469 F.2d 927, 935 (1972) (Wright, J., concurring) (casting doubt on sufficiency of stop based only on store manager's claim that customer was acting "suspicious"). The suspect was clearly indicated and his criminal actions were described with some particularity.

Moreover, although the informant did not identify himself by name, he would have been available for further questioning if the agent had judged the procedure appropriate. Unlike a person who makes an anonymous telephone call, this informant confronted the agent directly. By thus presenting himself to the agent and doing so while driving a car from which his identity might easily be traced, the informant was in a position to be held accountable for his intervention. The reliability of the information was thus increased.

Finally, there are reasons to support the agent's failure to converse further with the informant, to ask for his name, or to note the license of his car. The suspect was in a vehicle moving away from the agent when the tip came, and we can infer from the record that it was reasonable for the agent to use his time to radio for assistance and to set off in pursuit, rather than to question the informant. There is nothing in the record which should have caused the agent to doubt the reliability or good faith of the informant in tendering information.

1. Some courts indicate that a citizen, who is not connected with the police or who is not a paid informant, is inherently trustworthy, when he advises the police a crime is being committed. *See, e. g., United States v. Unger,* 469 F.2d 1283, 1287 n. 4 (7th Cir. 1972), *cert. denied,* 411 U.S. 920, 93 S.Ct. 1546, 36 L.Ed.2d 313 (1973), and cases cited therein. This position may be based on the notion that these informants have less motive to lie because they are unpaid. *See United States v. Rollins,* 522 F.2d 160, 164 (2d Cir. 1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976); *United States v. Wilson,* 479 F.2d 936, 940 (7th Cir. 1973) (en banc); *Unger,* 469 F.2d at 1287 n. 4; *Brown v. United States,* 125 U.S.App.D.C. 43, 46, 365 F.2d 976, 979 (1966) (per Judge, now Chief Justice, Burger).

We conclude that the informant's tip, considered in the light of the surrounding circumstances we have mentioned, was sufficient to justify the stop. The district court properly denied appellant's motion to suppress the evidence as the product of an illegal stop.

## II

▊ After appellant was stopped, one of the agents asked the appellant, "May I look inside the truck?" The answer was in the affirmative, and the agent looked not only in the cab of the truck but also in the back cargo portion, and finally under the hood. He discovered the marijuana there. The appellant asserts that when the border patrol agent opened the hood he went beyond the scope of the appellant's consent to search the truck.

The issue of whether or not consent to search was freely and voluntarily given is one of fact to be determined on the basis of the totality of circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The trial judge's finding will be overturned in this regard only if clearly erroneous. *United States v. Lemon*, 550 F.2d 467, 472 (9th Cir. 1977); *United States v. Page*, 302 F.2d 81, 85 (9th Cir. 1962) (en banc). A subspecies of the voluntariness inquiry which is relevant here is the question of whether the search that was conducted was the one to which the assent was given, that is, whether or not the search remained within the boundaries of the consent. This, too, is a question of facts and on this record we do not find the lower court's determination to have been clearly erroneous. Before the hood was opened the appellant gave permission for an agent to look in the back of the truck and even went so far as to aid in the search. He expressed no concern when the agent proceeded to the hood, and apparently made no attempt to retract or narrow his consent. *See United States v. Miller*, 491 F.2d 638, 651 (5th Cir.), *cert. denied*, 419 U.S. 970, 95 S.Ct. 236, 42 L.Ed.2d 186 (1974). Failure to object to the continuation of the search in these circumstances is properly considered

as an indication that the search was within the scope of the initial consent. The evidence obtained from the search was admissible.

AFFIRMED.