[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO SUPPRESS
In this criminal action defendant stands charged with one count of possession of cocaine with intent to sell in violation of General Statutes § 21a-278(b), and one count of possession of marijuana with intent to sell in violation of § 21a-277(b) of said statutes.
Defendant has moved, pursuant to Practice Book § 820, and applicable state in Federal Constitutional Provisions to CT Page 1698-A suppress and exclude from evidence suspected crack cocaine and marijuana seized from him by officers of the New London Police Department in the afternoon hours of July 1, 1994. For reasons hereinafter stated the motion is granted.
From the evidence and the conclusions drawn from such evidence, the following facts are found.
On the afternoon of July 1, 1994, Officers Pero and Sizer of the New London Police Department were on bicycle patrol in the downtown area near the railroad station. Shortly before 3:00 they observed a train arriving at the station from the New York-New Haven direction. The officers observed a group of four young black men, who appeared to have gotten off the train, looking at them and acting in a nervous manner. It was known to the officers that on past occasions, young black men had used the train to travel from the New York area to sell drugs in New London.
As the young men entered the station, the officers discussed whether they should stop the group for questioning. CT Page 1698-B
Three of the young black men, one of whom was defendant, then left the station and walked up State Street, past the officers, turning left onto Bank Street. After the group had gone about fifty yards on Bank Street, the officers approached them on their bicycles. Officer Pero said, "Hey guys, can we talk to you for a minute?" Defendant and the other young men turned and appeared to agree to engage in what the officers described as a field interview. One of them replied to Officer Pero by saying, "What's up?" When asked for identification, two of the young men were able to produce it, defendant had no identification.
There was a general questioning of the group by the police with a young man by the name of Seaborn supplying most of the answers. Seaborn indicated that they would be staying at 21 Williams Street for the summer. The officers new that 21 Williams Street had recently been raided for narcotics.
Officer Pero became suspicious of defendant. Both Seaborn and the other young man named Epps were wearing CT Page 1698-C backpacks, while defendant did not appear to have any summer clothes with him and was carrying only a shoe box in a plastic bag. Pero asked defendant what he had in the shoe box. The defendant replied that the box contained new sneakers. Noting that defendant was wearing new sneakers, Pero asked defendant, could I see them?
In response, defendant placed the box on the hood of a nearby parked car and lifted up the lid. Pero looked into the box and saw what appeared to be a brand new pair of Nike sneakers. The officer then reached into the box and removed the sneakers. In so doing, he observed a plastic bag in one of the sneakers.[1] From his training an experience, Pero correctly concluded that the bag contained crack cocaine. The officers then seized the cocaine and placed defendant under arrest.
Defendant has moved to suppress the evidence seized claiming that the cocaine was seized in violation of his rights under the fourth amendment to the United States Constitution and applicable sections of the Constitution of CT Page 1698-D the State of Connecticut. He has raised a number of issues principally that he was a victim of an improper Terry stop.Terry v. Ohio, 392 U.S. 1; 88 Supreme Court 868 (1968).
Certain seizures are justifiable under thefourth amendment even in the absence of probable cause, if there is an articulable suspicion that a person has committed or is about to commit a crime. State v. Edwards, 214 Conn. 57, 71
(1990). This is the so-called Terry stop, one function of which is to maintain the status quo for a brief period of time to enable the police to investigate a suspected crime. Id.
Applying the analysis adopted by the majority in State v.Oquendo, 223 Conn. 635, 654 (1992) to the factual situation here it cannot be found that the police had a particularized and objective basis for suspecting defendant of criminal activity. A group of young black men coming to New London from the direction of New York might get the officer's attention. The fact that they were going to spend the summer at an address previously searched for narcotics, and that the defendant did not appear to have any summer clothing with him at the time might arouse suspicion. Such suspicion, however, CT Page 1698-E could only be based upon speculation. There was nothing which could be particularized. All of the factors upon which suspicion was based could just as logically have had an innocent explanation. However, a police officer, in carrying on his duties, may stop and speak to individuals on the street without necessarily implicating the individual's Constitutional rights. State v. Oquendo supra, 656.
The requirement of "articulable suspicion," does not apply in all situations. Although the officers were in uniform, obviously on duty and armed, the interview took place on a busy public street in the late afternoon. The initial request to talk by the police, and the response by the defendant and his associates, indicated that the interview was a consensual encounter. The young men were never in police custody and their cooperation was voluntary. With respect to the search of the shoe box, it is unnecessary to apply the analysis adopted by the majority in State v. Oquendo, supra, 654 to determine if the police had a particularized and objective basis for suspecting defendant of criminal activity. Whether or not Officer Pero's suspicion of defendant's CT Page 1698-F criminal conduct or criminal involvement was constitutionally sound his request of defendant was merely precatory.
On being informed that the shoe box contained new sneakers, and suspecting that this might not be true since defendant was wearing new sneakers, the officer asked, "could I see them?" According to the officer, defendant complied with request by placing the box on the automobile and removing the cover so that he could see the new sneakers in the box. There is nothing to indicate that defendant's compliance was other than voluntary. The officer's observation confirmed defendant's statement that the box contained new sneakers.
This brings us to the pivotal issue of the case. By what authority did the officer remove the sneakers from the box?
It has already been determined that no particularized and objective basis existed for concluding that defendant was involved in specific criminal activity. If the contents of the sneakers were legally seized, such seizure could only be with the consent of defendant. Whether the search of the CT Page 1698-G inside of the box and the sneakers was one to which consent was given, that is whether or not the search remained within the boundaries of consent given by defendant has to be determined on the basis of the totality of circumstances.U.S. v. Sierra-Hernandez, 581 F.2d 760, 764 (1978).
The circumstances here indicate that in removing the shoes from the box the officer exceeded the limits of consent given by defendant. The officer, suspecting that the box did not contain shoes, asked to view the inside of the box. Defendant voluntarily complied with the request by placing the box down and removing the lid exposing the sneakers to view. There was never a request to look inside of the sneakers or to remove them for inspection. Also, defendant's lack of objection is not a significant factor since the time involved was so short.
As the majority in Oquendo, supra, 657 stated: "In a close case like the present one, the balance ought to be struck on the side of the freedom of the citizen from the governmental intrusion. To conclude otherwise would be to CT Page 1698-H elevate society's interest in apprehending offenders above the right of citizens to be free from unreasonable stops."
Accordingly, the motion to suppress is granted.
Purtill, J.