# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-99-00793-CR

---

**The State of Texas, Appellant**

**v.**

**James Dean Fudge, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY,
### NO. 517,426, HONORABLE DAVID F. CRAIN, JUDGE PRESIDING

---

Appellee James Dean Fudge was charged with driving while intoxicated. *See* Tex. Penal Code Ann. § 40.04(a) (West Supp. 2001). He filed a pretrial motion to suppress contending that the evidence of the offense was discovered during an improper investigative stop. Following a hearing, the county court at law suppressed the evidence and the State appeals. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2001). The issue on appeal is whether the police officer lawfully stopped appellee based on unsolicited information given to the officer in a face-to-face manner. We will reverse the order of the county court at law and remand the cause for further proceedings.

## Background

On October 20, 1998, Tim Pruett, an Austin police officer with eight years' experience, was in the process of arresting an individual on a traffic warrant at a Texaco convenience store and gas station located at the intersection of West Ben White and South Congress Avenue. While Officer Pruett was making the arrest, a taxi cab pulled into the parking area of the store near Officer Pruett. The cab driver got out of the cab, came over to Officer Pruett, and told him that he had seen a white pickup truck driving "all over the road," that the truck "couldn't stay on the road," and that he "believed [the driver] was drunk."[1] Just as the cab driver finished telling Officer Pruett about the white pickup, he told Officer Pruett, "That's it right there." At that moment, Officer Pruett watched as a white pickup pulled into the parking lot, drove around the back of the store and then drove back toward the front of the store. As the truck came around to the front of the store, Officer Pruett stopped the truck and asked appellee, the driver, to step out. Appellee got out of the truck and grabbed the side of the truck to maintain his balance. Officer Pruett noticed appellee's eyes were bloodshot and there was a strong odor of alcohol on his breath. Officer Pruett requested that another officer give appellee field sobriety tests. After failing the sobriety tests, appellee was arrested for driving while intoxicated.

In a pretrial motion, appellee moved to suppress the evidence obtained by the police contending that Officer Pruett stopped him without having a reasonable suspicion of any unlawful

---

[1] The affidavit for warrant of arrest and detention contained in the clerk's record notes that a Scott Wesely Cook "residing at 6702 N. Lamar #113 identified the said accused to Officer T. Pruett as the driver of [a] 1994 Chevy truck." There is no indication that the affidavit was admitted at the suppression hearing or that it was considered by the court.

activity. During the pretrial suppression hearing, the only evidence presented was Officer Pruett's testimony. He testified that his *sole basis* for the stop was the unsolicited information provided to him in a face-to-face manner by the cab driver. He further testified that he did not observe appellee commit any traffic violation. The State did not elicit any testimony about the cab driver. In its suppression order, the county court at law court expressly ruled:

> Court finds officer's testimony is credible but that officer had not sufficient probable cause nor reasonable suspicion for the initial detention of defendant as was stated in the record.

Accordingly, the trial court suppressed all of the evidence obtained as a result of the stop.

### Discussion

On appeal, the State contends that the county court at law erred in granting the motion to suppress because the stop did not violate appellee's rights under the Fourth Amendment to the United States Constitution, under Article I, section 9 of the Texas Constitution, or under Chapters 14 and 38 of the Texas Code of Criminal Procedure.

The appropriate standard of review for a suppression ruling is a bifurcated review, giving almost total deference to the trial court's findings of fact, but conducting a *de novo* review of the court's application of law to those facts. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1999).

Police officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry* v. *Ohio*, 392 U.S.

3

1, 22-26 (1968); *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989). To justify the investigative detention, the individual officer must have a reasonable suspicion that "some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime." *Terry*, 392 U.S. at 21-22; *Johnson v. State*, 658 S.W.2d 623, 626 (Tex. Crim. App. 1983); *Harris v. State*, 913 S.W.2d 706, 708 (Tex. App.—Texarkana 1995, no pet.). The officer must have specific articulable facts which, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the person detained for investigation. *Terry*, 392 U.S. at 30; *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); *Comer v. State*, 754 S.W.2d 656, 657 (Tex. Crim. App. 1986); *Johnson*, 658 S.W.2d at 626.

The reasonableness of a temporary stop turns on the "totality of the circumstances" in each case. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983); *Shaffer v. State*, 562 S.W.2d 853, 855 (Tex. Crim. App. 1978); *Davis v. State*, 794 S.W.2d 123, 125 (Tex. App.—Austin 1990, pet. ref'd). Reasonable suspicion, like probable cause, is dependent upon both the content of the information possessed by the police and its degree of reliability. *Alabama v. White*, 496 U.S. 325, 330 (1990). "Both factors—quantity and quality—are considered in the totality of the circumstances—the whole picture . . . must be taken into account when evaluating whether there is reasonable suspicion." *Id.* (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)); *see also Carmouche*, 10 S.W.3d at 328-29; *Reynolds v. State*, 962 S.W.2d 307, 311 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd).

In this case, the county court at law expressly found that Officer Pruett's testimony was credible. *Cf. Ross*, 32 S.W.3d at 857 (trial court made no finding of fact that officer's testimony

4

was credible). Based on the standard of review, we will give great deference to this finding. The county court's suppression of the evidence, therefore, must rest on the determination that the facts established by Officer Pruett's testimony do not constitute reasonable suspicion for the stop. *Id.* at 856-57. The crucial portion of Officer Pruett's testimony was that his *only basis* for stopping appellee was the information provided to him in a face-to-face manner by the cab driver; he did not observe any independent acts upon which to lawfully base the stop. The issue for us in reviewing *de novo* the application of search and seizure law to the facts is, whether considering the totality of the circumstances, did Officer Pruett, based solely on the information provided to him in a face-to-face manner by the cab driver, have the reasonable suspicion necessary to lawfully stop appellee.

A tip by an unnamed informant of undisclosed reliability standing alone rarely will establish the requisite level of reasonable suspicion necessary to justify an investigative detention. *Florida v. J.L.*, 529 U.S. 266, 269 (2000) (citing *White*, 496 U.S. at 329). There must be some further indicia of reliability, some additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. *Id.*

Other courts have addressed the issue of whether unsolicitated information from a person who, in a face-to-face manner, advises an officer that a designated person present on the scene is committing or has committed a specific crime, should be given serious attention and great weight by the officer. *See United States v. Sierra-Hernandez*, 581 F.2d 760 (9th Cir. 1978); *State v. Sailo*, 910 S.W.2d 184 (Tex. App.—Fort Worth 1995, pet. ref'd); *see also State v. Garcia*, 25 S.W.3d 908

5

(Tex. App.—Houston [14th Dist.] 2000, no pet.); *J.L.*, 529 U.S. at 274-76 (Kennedy, J., concurring).

In *Sierra-Hernandez*, a man described only as "wearing farmer's overalls and a baseball cap and driving a late-model brown Mercedes-Benz" approached a border patrol officer who was working during mid-day checking the citizenship of workers in a field just north of the Mexico-United States border. *Sierra-Hernandez*, 581 F.2d at 762. The man pointed to a black pickup and said, "The black pickup truck just loaded with weed at the canebreak." The officer knew that the general neighborhood and the canebreak in particular were sites of previous incidents of drug smuggling and illegal entry of aliens. *Id.* Without any other information from the man, the officer radioed for help and began following the pickup. He stopped the pickup about four and a half miles later and arrested the driver, the sole occupant in the car, for possession of marihuana. The *Sierra-Hernandez* court held that a person who is not connected with the police or who is not a paid informant is inherently trustworthy when the person approaches a police officer and, in a face-to-face manner, gives the officer unsolicited information that a crime is being committed. *Id*. at 763. The court noted that just as there is no per se rule establishing the reliability of a person's information to justify a stop in every instance, likewise there is no per se rule requiring an officer to obtain the identity of a person giving information before acting on that information. In evaluating the reasonableness of the officer's conduct the court considered both the circumstances in which the information was given to the officer and the facts that would justify the officer in acting on the information without knowing the person's identity or obtaining information for tracing him later. The indicia of reliability the court noted were the officer's knowledge that the canebreak was the site of

6

previous criminal activity, the information was neither vague about the type of criminal activity nor the time of the criminal activity, and the suspect was clearly indicated and his actions described with some particularity. *Id*. By presenting himself to the officer in a face-to-face manner and doing so while driving a car from which his identity *might* be traced, the person was in a position to be held accountable for his intervention. The court held that there was nothing in the record that should have caused the officer to doubt the reliability or good faith of the person tendering the information. The court concluded that the information, considered in light of the circumstances, was sufficient to provide the officer with the necessary reasonable suspicion to justify the stop. *Id.*

In *State v. Sailo*, while officers were performing a traffic stop, "a white male who was a distinguished-looking older gentleman in his mid-fifties with graying hair" drove up from the opposite direction and shouted at the officers excitedly from across the road. *Sailo*, 910 S.W.2d at 186. One of the officers crossed to the middle of the road where the man told the officer that he had seen a small, white Toyota pickup truck driving all over the road and that it had almost run into a ditch twice. The man suspected that the driver of the pickup was drunk. The man said that the truck would be approaching from behind him. The officer asked the man to wait on the side of the road. The officer next saw a white Toyota pickup truck approaching exactly as the man indicated. The officer asked the driver, Sailo, to drive into a nearby parking area so he could investigate. The investigating officers testified that they did not observe the pickup commit any traffic violations. Although the man who alerted the officers waited briefly on the side of the road, he drove away before either officer could get any identifying information from him. Sailo was arrested for driving while intoxicated. The *Sailo* court held that there was nothing in the record that should have caused

the officers to doubt the reliability or good faith of the man who gave them the information. The man, although unknown to the officers, was sufficiently reliable because he came forward to give the officer unsolicited information in a face-to-face manner. *Id.* at 188. The court held that a person presenting himself to a police officer, and doing so while driving a car from which his identity might easily be traced, puts himself in a position to be held accountable for his intervention unlike a person who makes an anonymous telephone call. *Id.* The *Sailo* court referred to *Illinois v. Gates*, in which the Supreme Court held that in situations where unsolicited information consists of a detailed description of wrongdoing, along with a statement that the event was observed firsthand, the information is to be given greater weight than might otherwise be the case. *Id.* at 189 (citing *Gates*, 462 U.S. at 234). The *Sailo* court noted that the officers knew the area was one of frequent DWI encounters, that the suspect was described by a reliable person, and that the suspect's location and criminal actions were indicated with some particularity. The *Sailo* court determined that given the totality of the circumstances, in light of the experience and knowledge of the officers, and giving great weight to the unsolicited information provided to the officers in a face-to-face manner, the officers had the reasonable suspicion necessary for an investigative stop.

In the case before us, unlike *Sierra-Hernandez* and *Sailo*, the record does not contain any evidence about whether Officer Pruett knew the area was a site of previous criminal activity. However, as in *Sierra-Hernandez* and *Sailo*, the primary indicia of reliability in this case was that the cab driver gave unsolicited information to Officer Pruett in a face-to-face manner. By approaching Officer Pruett face-to-face, the cab driver put himself in a position where he could have been held accountable for his intervention. Additionally, following the holding in *Sierra-Hernandez* that a

8

person, not connected with the police or not a paid informant, who gives a police officer unsolicited information in a face-to-face manner is inherently reliable, there is nothing in the suppression record that should have caused Officer Pruett to doubt the cab driver's inherent reliability or good faith. Another indicia of reliability in the present case was that the information given by the cab driver was neither imprecise about the time of the criminal activity nor vague about the kind of criminal activity. We hold that based on the totality of the circumstances, Officer Pruett had specific facts, which in light of his experience and personal knowledge, together with inferences from those facts, gave him the reasonable suspicion necessary to warrant an investigative stop of appellee.

**Conclusion**

We hold that the county court at law erred in its application of the law to the facts of this case and that the suppression motion should have been overruled. The State's issue is sustained. We reverse the suppression order of the county court at law and remand the cause for further proceedings.

_____

Lee Yeakel, Justice

Before Justices Yeakel, Patterson and Jones[*]

Reversed and Remanded

Filed: February 28, 2001

Publish

*   Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).