

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00310-CR

Antonio **DOMINGUEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 9, Bexar County, Texas
Trial Court No. 391724
Honorable Walden Shelton, Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Karen Angelini, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  August 27, 2014

AFFIRMED

Antonio Dominguez was charged with and convicted of DWI. In this appeal, Dominguez argues the trial court erred in denying his pretrial motion to suppress. We affirm.

### BACKGROUND

The only witness to testify at the motion to suppress hearing was San Antonio Police Officer Richard Conrad. Officer Conrad testified that on the night in question at about 10:30 p.m., he started his shift at roll call. During roll call, he heard on his radio a "be-on-the-lookout" (BOLO) for a full-size Ford or Dodge white pickup truck in the Lincoln Court area that was causing a

disturbance. Officer Conrad testified, "I heard that there was a disturbance being created. The individual was trying to pick up people in the area." Officer Conrad explained a BOLO is something that dispatch broadcasts over the radio to advise officers that an incident is occurring. According to Officer Conrad, the Lincoln Court apartments are in a very dangerous area–one known for gang activity, drugs and prostitution. In his six weeks of patrol there, Officer Conrad had handled four to five shootings. According to Officer Conrad, the BOLO stated that the individual in the white pickup truck had been seen multiple times.

After roll call, Officer Conrad went to the Lincoln Court area where he saw a group of people running down the street. He saw a Hispanic male, later identified as Adam Castro, in front of the group running fast. Officer Conrad testified that the people who were on the street appeared to be angry, upset, and in distress. Officer Conrad then saw a white four-door pickup truck. It was the only vehicle on the road at the time. Castro was yelling something Officer Conrad could not hear. Castro then waved Officer Conrad down and pointed at the pickup truck. Castro said, "That's the truck right there that was trying to pick up my nieces." When Officer Conrad asked Castro what the man was doing, Castro replied, "[H]e was trying to take them to go party." Castro said his nieces were ages twelve and sixteen. Officer Conrad then followed the pickup truck.

Officer Conrad testified that at the time he was following the pickup truck, he was thinking that a disturbance was going on because the individual may have attempted to pick up Castro's twelve and sixteen year-old nieces. Officer Conrad further testified that he was not sure what the man in the pickup truck was trying to do: "There's multiple things that were going on–it could have been a kidnapping, was he trying to pick up these girls for any kind of sexual conduct, drug activity, I wasn't sure." Further, Officer Conrad stated, "So I wanted to stop him and talk to him and then, you know, figure out what was going on at the time. Because I knew the only thing I had for sure was that there was a disturbance going on."

Officer Conrad also testified that when Castro waved him down, Castro gave him the license plate number and a description of the driver. And, Officer Conrad testified he made visual contact with the pickup truck. Officer Conrad followed the pickup truck into a parking lot and pulled in behind it. Officer Conrad testified that when the driver stepped out of the pickup truck, he appeared intoxicated. The driver was the defendant, Antonio Dominguez. Officer Conrad testified that he believed he had a duty to protect the driver of the pickup truck as well as the crowd in the street. According to Officer Conrad, he believed there was a potential for harm. He knew there was a disturbance happening, and his immediate involvement was necessary to stop it.

After hearing Officer Conrad's testimony and counsels' arguments, the trial court denied the motion to suppress. The trial court signed findings of fact and conclusions of law, which included the conclusion that "Officer Conrad articulated facts and reasonable inferences [that] support an objective determination of reasonable suspicion." On appeal, Dominguez contends that the trial court erred in denying his motion to suppress because (1) Castro was not a reliable informant, and (2) Officer Conrad did not have sufficient facts to establish reasonable suspicion for the detention.

## DISCUSSION

A warrantless detention that amounts to less than a full-blown custodial arrest must be justified by a reasonable suspicion. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law. *Id.* Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Id.* This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.* A

reasonable-suspicion determination is made by considering the totality of the circumstances. *Id.* at 492-93. The circumstances may seem innocent in isolation, but may combine to reasonably suggest the imminence of criminal conduct. *Reid v. Georgia*, 448 U.S. 438, 441 (1980). "[T]he relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular types of non-criminal acts." *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997) (citing *United States v. Sokolow*, 490 U.S. 1, 9-10 (1989)). In evaluating the totality of the circumstances, we use a bifurcated standard of review. *Ford*, 158 S.W.3d at 493. We give almost total deference to the trial court's determination of historical facts and review de novo the trial court's application of law to facts not turning on credibility and demeanor. *Id.*

Dominguez argues the trial court erred in denying his motion to suppress because Castro was not a reliable citizen informant. "A tip by an unnamed informant of undisclosed reliability standing alone rarely will establish the requisite level of reasonable suspicion necessary to justify an investigative detention." *State v. Fudge*, 42 S.W.3d 226, 231 (Tex. App.—Austin 2001, no pet.). "There must be some further indicia of reliability, some additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified." *Id.* Courts have explained that "just as there is no per se rule establishing the reliability of a person's information to justify a stop in every instance, likewise there is no per se rule requiring an officer to obtain the identity of a person giving information before acting on that information." *Id.* at 231. In evaluating the reasonableness of the officer's conduct, a court can consider "both the circumstances in which the information was given to the officer and the facts that would justify the officer in acting on the information without knowing the person's identity or obtaining information for tracing him later." *Id.* Thus, courts have given credence to a citizen informant, not connected with the police, who gives a police officer unsolicited information in a face-to-face manner, thereby holding himself to account for the accuracy and veracity of his report. *See Derichsweiler v. State*, 348 S.W.3d 906,

914-15 (Tex. Crim. App. 2011). The Texas Court of Criminal Appeals has explained that such information "may be regarded as reliable," and that "[i]n such a scenario, the only question is whether the information that the known citizen-informant provides, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot." *Id.* at 915.

Although Dominguez acknowledges that Castro had a face-to-face encounter with Officer Conrad, he nevertheless argues Castro is not a reliable citizen informant because Castro did not "state that he witnessed the event." The fact that Castro did have a face-to-face encounter with Officer Conrad and can be held accountable, however, is the reason the officer could regard him as reliable. *See Arizpe v. State*, 308 S.W.3d 89, 93 (Tex. App.—San Antonio 2010, no pet.) (explaining that courts recognize the heightened reliability of a tip provided by an unidentified informant who places himself in a position to be easily identified and held responsible for the information he provides). Additionally, Officer Conrad received sufficient information from which he could conclude that Castro actually witnessed the reported event. At the time Officer Conrad arrived at the scene, he observed Castro chasing and pointing at the white pickup truck. He further observed Castro flag him down to report that the driver of the white pickup truck had driven by the area and had asked Castro's nieces, ages twelve and sixteen, to "go party." Castro was able to relate to Officer Conrad the license plate number on the white pickup truck. And, according to Officer Conrad, Castro and others who were chasing the white pickup truck were angry and agitated. Based on his observations, Officer Conrad could have reasonably believed Castro witnessed the events he reported.

Dominguez further argues that Castro, as a citizen-informant, was required to report a specific crime to Officer Conrad in order to be considered reliable. According to Dominguez, the report that a man was trying to pick up two girls, ages twelve and sixteen, to "go party" did not

amount to an allegation of a specific crime and, therefore, no inference could be drawn about criminal activity. Dominguez further argues that no specific crime could be inferred because Officer Conrad testified he did not know what was happening. Dominguez emphasizes that Officer Conrad testified that it could have been "multiple things": a kidnapping, a possible pick up for sexual conduct, or drug activity. However, there is no requirement for a specific penal code offense to be identified. *Derichsweiler*, 348 S.W.3d at 916-17. "Particularly with respect to information suggesting that a crime is *about* to occur, the requirement that there be 'some indication that the unusual activity is related to crime' does not necessarily mean that the information must lead inexorably to the conclusion that a particular and identifiable penal code offense is imminent." *Id.* at 917 (quoting *Meeks v. State*, 653 S.W.2d 6, 12 (Tex. Crim. App. 1983)) (emphasis in original). When considering whether there is reasonable suspicion, it does not matter that the conduct could be construed as innocent; "it is enough that the totality of the circumstances, viewed objectively and in the aggregate, suggests the realistic possibility of a criminal motive, however amorphous, that was about to be acted upon." *Id.* Thus, in this case, Castro did not need to identify a specific criminal offense to Officer Conrad. And, in considering the totality of the circumstances, the trial court could conclude the officer believed there was a realistic possibility of a criminal motive that was about to be acted upon.

Finally, Dominguez argues that the detention was not justified because Castro's report of events was not corroborated by Officer Conrad. This argument is based, in large part, on Dominguez's contention that Castro could not be considered a reliable informant. We have, however, already found that the officer could consider Castro to be a reliable informant. And, because Castro was a face-to-face, unsolicited informant, a lesser amount of corroboration is required than if Castro had been an anonymous caller. *See Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011) (explaining that "[a]n inverse relationship exists between the reliability of

the informant and the amount of corroborated information required to justify the police intrusion; the less reliable the tip, the more information is needed.").

"Corroboration by law enforcement of any information related by the informant may increase the reliability of the information." *Pipkin v. State*, 114 S.W.3d 649, 654 (Tex. App.—Fort Worth 2003, no pet.). "Corroboration in this sense does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed." *Id.* "Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is justified." *Id.* As noted, in addition to hearing Castro's report that a man in a white pickup truck had tried to pick up his underage nieces to "go party," Officer Conrad knew someone driving a white pickup truck was causing a disturbance by trying to pick somebody up in a high-crime and dangerous area of town. He also observed a group of angry, agitated people, including Castro, chasing the white pickup truck down the street. Officer Conrad saw the pickup truck, the only other vehicle on the road, leaving the area. After Castro pointed out the pickup truck to Officer Conrad and provided him with the license plate number and a description of the driver, Officer Conrad made visual contact with the driver of the pickup truck. All of these facts were sufficient corroboration, and Officer Conrad had reasonable suspicion to justify the detention. *See State v. Kerwick*, 393 S.W.3d 270 (Tex. Crim. App. 2013) (holding investigative detention reasonable where officer responded to a report that people were fighting in front of a bar; officer saw several people standing outside the bar; a person who owned a damaged vehicle at the location pointed at a parked vehicle and stated, "There they are right there," and as the officer approached the vehicle, it began to move).

Based on the totality of the circumstances, we conclude the trial court did not err in denying Dominguez's motion to suppress. We therefore affirm the judgment of the trial court.

Karen Angelini, Justice

Do not publish