# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00267-CR

**David Edwin Wiede, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
NO. 96-0115, HONORABLE JACK ROBISON, JUDGE PRESIDING**

---

## D I S S E N T I N G   O P I N I O N

Because the trial judge is the sole judge of the credibility of the witnesses and we are to uphold the trial court's ruling on any theory of law applicable to the case, and because this probation revocation hearing involves an application of law to facts, the outcome of which turns on the credibility and demeanor of the witnesses, I would affirm the trial court's revocation order. *See State v. Ross*, 32 S.W.3d 853 (2000). We accord the trial court its necessary and proper role because it is the trial court that observes firsthand the demeanor and appearance of witnesses. But brushing aside the standard of review here, the majority reviewed a cold record, resurrected soundbites of testimony to support its own fact-finding, and engaged in a *post hoc* evaluation of governmental

conduct that the trial court had found was reasonable in its context. Because the majority failed to adhere to the appropriate standard of review, I dissent.[1]

At a hearing on the State's motion to revoke probation, the record reveals the following facts. Ray Tambunga, a high school teacher with the Austin Independent School District, was taking his son to school at approximately 7:00 a.m. on April 17, 2002. He stopped at the T-intersection of Siebert Drive and F.M. 150 in Hays County behind an 18-wheeler truck loaded with sod. He waited while the truck turned left onto F.M. 150. As Tambunga turned right on F.M. 150, he saw appellant's white sports car pass by a "little bit faster than the speed limit." Tambunga watched as appellant collided with the truck that continued on down the roadway.

Tambunga pulled off the highway and stopped to check on appellant's condition. Tambunga went over to the driver's side window of appellant's car and asked appellant if he was all right. There, Tambunga observed that appellant was dazed and bleeding. Within a few minutes, a department of public safety trooper stopped to help.

DPS Trooper Christopher McGuairt testified that he came upon the accident shortly after it occurred as he was traveling from Austin to San Marcos with another trooper to conduct a DPS training exercise for new officers. McGuairt testified that he saw a vehicle in the road, facing the opposite direction, with severe damage to the front portion of the car. The officers called in the accident, located the 18-wheeler that was also involved in the accident, and began directing traffic. Appellant was badly injured with cuts and abrasions, and was bleeding on his face.

---

[1] *See also Wiede v. State*, No. 03-03-00325-CR, 2005 Tex. App. LEXIS 452 (Tex. App.—Austin Jan. 21, 2005, no pet. h.).

2

As other law enforcement personnel arrived on the scene, Tambunga remained near appellant's car. At one point, appellant's movements led Tambunga to believe he was going to light a cigarette. Leaning forward to dissuade appellant from smoking, Tambunga saw appellant make some movements, reaching across his body with his left hand "as if he was getting something out of his pocket." Tambunga told the officers that he saw appellant "reach across his body and hide something between the seat, the driver's seat and the console." Tambunga testified that the item covered by appellant's hand appeared to be "clear plastic similar to a sandwich bag." The officer retrieved an item from the area near the console. Tambunga testified:

> [A]t first, he [the officer] produced a little—a small square about two by two plastic wrapper that had been torn—ripped open and I saw and said, no. It was—I told him, I said it appeared larger than that. It looked like it was bigger than that. So he went back and he produced a sandwich size bag, you know, with something in the bottom, some kind of off-white, whitish in the bag.

It "looked like powder."

McGuairt also testified that Tambunga advised the officers that appellant had "removed something from his pocket and reached back and placed it around the console area." McGuairt testified that the circumstances of the accident and Tambunga's tip caused him to be suspicious that appellant had hidden "some type of contraband." He observed another officer "reach into the center console area and remove[] a substance" that was "off-white colored" and inside a clear plastic bag. McGuairt took possession of the bag.

Appellant had been removed from the car and placed in the ambulance. McGuairt testified that he knocked on the back door of the emergency vehicle to advise the EMS personnel of the existence of the bag of white powdery substance. When DPS Trooper Freeman, the investigating

3

officer, arrived on the scene, McGuairt turned the substance over to him. Because appellant's car was disabled and blocking traffic, it was towed from the scene by a private wrecking service. Appellant was charged with having no liability insurance and with failure to control speed. At the hearing on the State's motion, Freeman testified that the accident was caused by appellant "traveling at an unsafe speed."

In reviewing a ruling on a challenge to the admission of evidence, we give almost total deference to the trial court's determination of historical facts and review the court's application of law *de novo*. *Ford v. State,* No. PD-1946-03, 2005 Tex. Crim. App. LEXIS 399, at *8 (Tex. Crim. App. March 9, 2005); *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). When the trial court does not make explicit findings of historical facts, we review the evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported in the record. *Id*. We must affirm the trial court's ruling if it can be upheld on any valid theory of law applicable to the case—even if the trial court did not base its decision on the applicable theory. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

When a defendant appeals from a probation revocation hearing, the question presented is whether the trial court abused its discretion in revoking the defendant's probation. *Bradley v. State*, 564 S.W.2d 727, 729 (Tex. Crim. App. 1978). In determining whether an abuse of discretion occurred, we review the evidence adduced at the revocation hearing in the light most favorable to the trial court's order. *Jones v. State*, 589 S.W.2d 419, 421 (Tex. Crim. App. 1979). At a probation revocation hearing, the trial court is the sole trier of fact and determines the credibility of the witnesses. *Ex parte Tarver*, 725 S.W.2d 195, 198 (Tex. Crim. App. 1986). The trial court

4

must find that the State satisfied its burden of showing that "the greater weight of the credible evidence . . . creates a reasonable belief that a condition of probation" was violated, and has "proved every element of the offense by a preponderance of the evidence." *Kulhanek v. State*, 587 S.W.2d 424, 426 (Tex. Crim. App. 1979).

Once the defendant establishes that a police search was not supported by a warrant, the burden shifts to the State to prove the reasonableness of the search and seizure and the admissibility of the evidence. *See Russell v. State*, 717 S.W.2d 7, 9-10 (Tex. Crim. App. 1986). It is undisputed in this case that appellant was not arrested and that the search was warrantless. To uphold the court's determination in this case, the evidence on which the court based its determination must have been properly admitted.

The State contends that the evidence was properly admitted because the appellant had no reasonable expectation of privacy in his automobile after he was involved in an accident that left the vehicle disabled and blocking a lane of highway traffic. The State also contends that the circumstances at the accident scene provided probable cause for the officers to search appellant's car.

The Texas Transportation Code expressly provides that "[a] peace officer who is notified of a motor vehicle accident resulting in injury . . . may investigate the accident and file justifiable charges relating to the accident . . ." Tex. Transp. Code Ann. § 550.041(a) (West 1999 & Supp. 2004-05). Not only are officers authorized to investigate accidents, they have a duty to do so, and conducting an investigation of the vehicles involved is a necessary part of fulfilling that duty. *Sandel v. State*, 253 S.W.2d 283, 285 (Tex. Crim. App. 1952). Here, the parties agree that the search was conducted as part of an accident investigation rather than a traffic stop or inventory search. The

5

officers were authorized to investigate the accident scene pursuant to section 550.041(a) of the Texas Transportation Code. The question remains whether they could lawfully retrieve the bag of methamphetamine located near the console.

Courts have long recognized that the physical characteristics and uses of an automobile result in a lessened expectation of privacy. *See*, *e.g.*, *Wyoming v. Houghton*, 526 U.S. 295, 303 (1999); *New York v. Class*, 475 U.S. 106, 112 (1986); *South Dakota v. Opperman*, 428 U.S. 364, 382 (1976). An automobile exception to the Fourth Amendment's warrant requirement, allowing officers to search vehicles without first obtaining a warrant in certain limited situations, has long been recognized by the Supreme Court. *See Carroll v. United States*, 267 U.S. 132, 149 (1925). Warrantless examinations of automobiles have been upheld in circumstances in which a search of a home or office would not. *Opperman*, 428 U.S. at 382; *Cardwell v. Lewis*, 417 U.S. 583, 589-90 (1974); *Chambers v. Maroney*, 399 U.S. 42, 48 (1970). This exception is derived from both the "ready mobility" of vehicles and the reduced expectation of privacy attached to vehicles. *California v. Carney*, 471 U.S. 386, 391-92 (1985). Courts have recognized that the inherent mobility of automobiles creates circumstances of exigency that make enforcement of the warrant requirement impossible. *Opperman*, 428 U.S. at 367; *Carroll*, 267 U.S. at 153-54.

This reduced expectation of privacy as to automobiles is further diminished by the public nature of automobile travel. In *Cardwell v. Lewis*, the Supreme Court observed that:

> One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its content are in plain view.

6

417 U.S. at 590.  The Court has recognized that, "as an everyday occurrence," vehicles are subjected to police stops and examinations to enforce pervasive governmental regulations, *Opperman*, 428 U.S. at 368, and are "exposed to traffic accidents that may render all of their contents open to public scrutiny."  *Houghton*, 526 U.S. at 303.  Recognizing still that drivers do not relinquish the protections afforded by the Fourth Amendment and the right of individuals to be free of unreasonable governmental intrusion, in *Cardwell* the Supreme Court observed that "insofar as the Fourth Amendment protection extends to a motor vehicle, it is the right to privacy that is the touchstone" of the inquiry.  417 U.S. at 591.  It is this touchstone of privacy that prohibits "unreasonable" searches and seizures.

The Supreme Court recognized that a warrantless search could still be constitutionally reasonable under the community caretaking exception to the Fourth Amendment in *Cady v. Dombrowski*, 413 U.S. 433 (1973).  The Court reasoned:

> Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Id*. at 441.  This case falls within the community caretaking exception to the Fourth Amendment's warrant requirement as formulated by the Supreme Court in *Cady* and the Texas Court of Criminal Appeals in *Wright v. State*, 7 S.W.3d 148, 153 (Tex. Crim. App. 1999).  In *Wright*, the court of criminal appeals addressed the issue of whether a deputy acted reasonably in stopping a vehicle out of concern for the defendant's welfare, after the officer observed the defendant, a passenger, retch

7

out of an open rear window. *Id*. at 150. In its opinion, the court made clear that the proper inquiry is whether the police officer acted reasonably under the totality of circumstances to render services in performing his duty to "serve and protect." *Id*. at 151. As to whether the officer acted reasonably, the court set forth four nonexclusive factors: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and (4) to what extent the individual—if not assisted—presented a danger to himself or others. *Id*. at 152.

In this case, the record demonstrates that appellant was seriously injured, located at the scene of an automobile collision, and in need of medical attention; he was removed from the car due to his injuries and transported to the hospital. At the time the officers executed the search pursuant to the tip, appellant had been removed from the car and the car was in the custody of the officers. Based on Tambunga's tip, the officer could infer—and the record supports—that the information was relevant to the existing circumstances, either the accident investigation or appellant's medical treatment. Indeed, Trooper McGuairt testified that he advised the emergency personnel of the existence of the drugs. Given these facts alone, the officers' actions were justified under the *Wright* four-factor test.

The record also establishes that the privacy interest at stake here was minimal. The automobile was demolished and inoperable; it was in the roadway, blocking a lane of the highway and was soon to be towed from the accident scene. The testimony at the hearing established that appellant made no requests or statements regarding the disposition of his vehicle. Appellant had no reason to believe that his car would not be removed from the roadway. Law enforcement, fire, and

8

emergency personnel were on the scene handling the emergency; the DPS troopers were investigating the cause of the accident as charged by law. *See* Tex. Transp. Code Ann. § 550.041. This *a fortiori* included following up on the information provided by Tambunga. The investigation at the scene performed an important and routine administrative purpose.

Even if the investigation of the accident scene was not justified by the community caretaking exception, the State also contends that the search was supported by probable cause. We review the totality of the circumstances to determine whether the search is supported by probable cause. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). The circumstances are viewed in light of the officer's knowledge and training on how to conduct searches and accident investigations. *United State v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995). "[A] 'trained officer draws inferences and makes deductions . . . that might well elude an untrained person,' and evidence collected 'must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'" *United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). If the circumstances are such that a person of reasonable caution would have probable cause to believe that either contraband or evidence of a crime is likely to be found in the vehicle, then the officers are justified in searching the area suspected of containing such evidence or contraband. *United States v. Ross*, 456 U.S. 798, 824 (1982); *Powell v. State*, 898 S.W.2d 821, 827 (Tex. Crim. App. 1994); *McNairy v. State*, 835 S.W.2d 101, 107 (Tex. Crim. App. 1991) (exigent circumstances justifying a warrantless entry include (i) rendering aid or assistance to persons whom the officers reasonably believe are in need of assistance or (ii) preventing the destruction of evidence or contraband).

9

Sufficient probable cause can result from a disinterested informant's tip. *See Gates*, 462 U.S. at 230-31. Information from a citizen who advises an officer in person that an individual present on the scene is committing a crime should be given serious attention and great weight by the officer. *United States v. Sierra-Hernandez*, 581 F.2d 760, 763 & n.1 (9th Cir. 1978). Such information given by a citizen, who is not connected with the police or who is not a paid informant, is inherently trustworthy. *Id*. Several factors can enhance the reliability of an informant's tip. An "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles the informant's tip to greater weight than might otherwise be the case." *State v. Adkins*, 829 S.W.2d 900, 901 (Tex. App.—Fort Worth 1992, pet. ref'd) (citing *Gates*, 462 U.S. at 234). The tip is also more reliable when the informant "came forward personally to give information that was immediately verifiable at the scene." *Adams v. Williams*, 407 U.S. 143, 146 (1972). A face-to-face informant who is located in close proximity to his own vehicle is more credible because his car provides a method by which his identity may easily be traced, thereby holding him accountable for his intervention. *Sierra-Hernandez*, 581 F.2d at 763 & n.1.

As the sole judge of the credibility of the witnesses and the weight to be given their testimony at the hearing, the trial court reasoned:

> The officer was there. The officer had a right to be there, and if he comes up with probable cause to believe that a crime occurred, he can investigate and he can search if he has probable cause.
>
> * * *
>
> I'm inclined to believe that that's probably probable cause to investigate further in this day and age and when an officer says that—has a witness tell him that he has now—has knowledge that somebody secreted a plastic bag, when there are police

10

officers standing all the way around the vehicle, I think that's probable cause to search right now . . . .

\* \* \*

But that's where I'm leaning to believe that that officer has probable cause and possibly a duty to investigate a possible crime in progress when it appears that somebody just secreted—And you add to that the fact that the guy might have been under the influence of drugs because an accident had just occurred and the fact that there are police officers all the way around, the totality of the circumstances—if I'm a cop, and I used to be one, I'm going to search there and see what's there.

\* \* \*

You got probable cause to believe that contraband is there and there's a crime afoot and they're about to tow the car away and you're not going to get a chance to check again, I think the officers would have been negligent not to check it.

An abundance of evidence in the record supports the trial court's finding that Ray Tambunga was a credible and reliable witness, and that probable cause existed. Tambunga was not an anonymous informant. Rather, he had a face-to-face conversation with the officer, gave a sworn statement of his report and remained on the scene, provided his name and contact information to the officers, and subsequently appeared at the hearing to testify. Tambunga was in close proximity to his own vehicle at the time of his report. These facts enhance Tambunga's reliability because they make him accountable for his statements. It is undisputed that Tambunga was a disinterested witness; he was not paid for the information, nor did he have any dealings with the police that would give him a motive to lie. That the trial court found Tambunga credible is clear from the record. After Tambunga testified, the court observed: "We actually had a good Samaritan. I think that's the first time I've ever heard testimony from a good Samaritan in the nine years that I've been on this bench. You hardly ever see that."

11

Based on Tambunga's detailed eyewitness account, a reasonable officer, given his training and experience, could infer that appellant's actions, in the context of the automobile collision, were consistent with the illegal use of alcohol or narcotics. Tambunga's report provided specific and articulable facts warranting the officer's belief that evidence of a crime or contraband was hidden in the console of appellant's car and gave rise to probable cause which justified the officer's warrantless search of the specified area.

As the trier of fact at the hearing, the trial court is free to believe or disbelieve all or any part of any witness's testimony. The trial court's decision here to admit the methamphetamine into evidence was based on its evaluation of the credibility of the witnesses and the weight to be accorded their testimony. Reviewing the evidence in the light most favorable to the trial court's ruling, I conclude that the record supports the court's determination.

In sum, I would hold that the district court properly admitted the evidence and did not abuse its discretion in granting the State's motion to revoke appellant's probation.

 

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Filed:   April 14, 2005

Publish